FILED'10 SEP 22 9:18USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RICHARD FOOS and MARTHA A. FOOS,

    Plaintiffs,

v.

VERIZON BUSINESS NETWORK
SERVICES, INC.; ATER Wynne, LLP,

    Defendants.

Civ. No. 10-CV-3040-PA

ORDER

**PANNER, District Judge:**

    Before the court are motions to dismiss from defendants Verizon Business Network Services, Inc. ("Verizon") and Ater Wynne, LLP ("Ater Wynne"). On September 20, 2010, the court heard oral argument on the motions. Plaintiffs Richard Foos and Martha A. Foos (the "Foos") allege violations of the Driver's Privacy Protection Act, 18 U.S.C. § 2721 et seq. (the "DPPA") and Invasion of Rights of Privacy. For the reasons discussed below I DENY defendants' motion to dismiss plaintiffs' DPPA claim under Fed. R.

Order - 1

Civ. P. 12(b)(1), DENY as moot defendants' Rule 12(b)(6) motions to dismiss plaintiffs' claim under 18 U.S.C. § 2722, and GRANT defendants' Rule 12(b)(6) motions to dismiss plaintiffs' claim under 18 U.S.C. § 2724(a). I decline to exercise supplemental jurisdiction over plaintiffs' state law claim.

## Facts

Joshua Scott, formerly known as Mickey Foos, is the son of plaintiff Richard Foos. (Compl., ¶ 6.) In 2007, Scott filed suit against Verizon and a private investigator in Joshua Scott v. Kippen Ward, et al, Case No. 07-0647-L2 ("Scott v. Ward") in Oregon state court. (Compl., ¶ 19.) Ater Wynne represented Verizon in Scott v. Ward. (Compl., ¶ 19.) Ater Wynne also represented Verizon's predecessor in MCI Worldcom Network Services, Inc. v. Jennette Goodwin, Case No. 04-CV-0382 ("MCI v. Goodwin") filed in Oregon state court in July 2004. Scott testified as a witness in MCI v. Goodwin. (Compl., ¶ 8.)

Scott alleged violations of the DPPA and the invasion of Scott's common law right to privacy. (Compl., ¶ 19.) During discovery in Scott v. Ward, Scott requested that "Verizon produce for inspection and copying all reports or other documents generated or obtained by Defendant Verizon or its attorneys, Defendant Ater Wynnee, arising out of or related to any alleged investigation of Joshua Scott." (Compl. ¶ 19.) Verizon moved for a protective order, arguing the requested information was

confidential work product. (Compl., ¶ 19.) Verizon then submitted a "Privilege Log" to the court for *in camera* review. (Compl., ¶ 19.) The "Privilege Log" contained records of searches, although defendants redacted the subject of certain searches. (Compl., ¶ 20.) The Foos allege that they were the subject of one or more of those searches. (Compl., ¶ 21.)

The "Privilege Log" revealed that in September 2006 a paralegal employed by Ater Wynne accessed several databases containing department of motor vehicle ("DMV") records. (Compl., ¶¶ 13, 19.) The paralegal ran "Property Deeds" and "Person Searches" on 1280 Grays Creek Road, Grants Pass, Oregon. (Compl., ¶ 17.) Plaintiffs also allege that the paralegal ran an "Advanced People Search" for the phone number (541) 862-8803, a "Comprehensive Business Report," and a "Business Search." (Compl., ¶ 18.) To access the records, the paralegal indicated the searches were for use in connection with a state court proceeding, and thus permissible under the DPPA. (Compl., ¶ 17.) Richard Foos previously owned the land, the phone number, and the business involved. (Compl., ¶ 25.)

The Foos allege they "had no involvement in the MCI v. Goodwin action and were known by the Defendants not to be witnesses in [the action at the time of the searches]." (Compl., ¶ 26.) Prior to February 15, 2010, the Foos "had no actual knowledge or any reasonable reason to believe that any searches of

Order - 3

any type or nature on them or their private and personal information had ever been sought or obtained by the Defendants at any time." (Compl., ¶ 29.)

**Standards**

On a motion to dismiss, the court must review the sufficiency of the complaint. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient facts that "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). This plausibility standard requires the pleader to present facts that demonstrate "more than a sheer possibility" that defendant is liable for the alleged misconduct. Id.

In considering a motion to dismiss, a court must distinguish between the factual allegations and legal conclusions asserted in the complaint. Id. All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. American Family Ass'n, Inc. v. City & County of San Frncisco, 277 F.3d 1114, 1120 (9th Cir. 2002). At the pleadings stage, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Therefore, if the well-pleaded factual allegations plausibly give rise to the relief sought, a court shall deny the motion to dismiss. Iqbal, 129 S.Ct. at 1950.

Order - 4

## Discussion

I.  **Standing**

Defendants argue plaintiffs lack standing and the complaint should be dismissed pursuant to Rule 12(b)(1). To have standing, a plaintiff must meet three elements:

> First, the plaintiff must have suffered an injury in fact - an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of - the injury has to be fairly traceable to the challenged action of the defendant, and not the result of some third pary not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Lujan v. Defenders of Wildlife, et al., 504 U.S. 555, 560 (1992) (quotation marks, footnote, and citations omitted). The Supreme Court recognizes that "Congress may enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute." Linda R.S. v. Richard D., 410 U.S. 614, 617 n.3 (1973).

Defendants argue plaintiffs have alleged no actual injury resulting from any DPPA violation. The DPPA, however, specifically recognizes that the improper disclosure, obtainment, or use of another's "personal information" results in "actual damages, but not less than liquidated damages in the amount of $2,500[.]" 18 U.S.C. § 2724(b)(1). The same statute authorizes plaintiffs in

Order - 5

DPPA actions to bring a civil suit in district court. § 2724(a).

Here, plaintiffs allege specific facts relating to how defendants obtained the personal information of plaintiffs. By enacting § 2724(a), Congress expressly created a legally protected interest in plaintiffs' "personal information." I conclude that for standing purposes, plaintiffs have demonstrated an injury in fact by alleging the improper obtainment and use of their "personal information" in violation of the DPPA.

The other standing prongs are not in dispute. Therefore, I deny defendants' motion under Rule 12(b)(1).

## II. Judicial Notice

Fed. R. of Evid. 201 states that a court may take judicial notice of a fact outside the pleadings if the fact is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001) (impliedly overruled on other grounds; See Crawford-El v. Britton, 523 U.S. 574, 592-93 (1998)). This includes court filings, even if under seal, because they "nonetheless are readily verifiable and, therefore, the proper subject of judicial notice." Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006). So long as the court takes notice of undisputed matters of public record, a Rule 12 motion is not converted into a motion for summary judgment. Lee, 250 F.3d at 689-90.

For the purpose of these motions to dismiss, I take judicial notice of certain portions of the Affidavit of Joshua Scott, Daniel's Decl., ex. 4, filed by Scott in Ward v. Scott. Specifically, that Scott swore to the court:

> I reside at 1280 Gray Creek Road in Grants Pass, Oregon. I am a witness in and integrally involved with [MCI v. Goodwin]. . . . In connection with the MCI lawsuit, I have been designated by Ms. Goodwin . . . to act as her representative in the action . . . in dealing with the strategy and minutiae involved in the lawsuit, on Ms. Goodwin's behalf.
>
> . . .
>
> In connection with the MCI lawsuit, my deposition was taken by MCI's attorney on June 29, 2005. In this deposition, apart from my knowledge concerning the factual circumstances surrounding the disputed lease and Ms. Goodwin's assertion of a breach thereof by MCI, the attorney for MCI attempted to obtain several aspects of personal information concerning me that I did not wish to disclose, such as the source of my income, the identity of the legal owner of the house where I reside, and other information that I consider private and not subject to indiscriminate and irrelevant disclosure. I did not feel it necessary to reveal such personal and private information about myself, as I highly value my fundamental right to privacy, and any invasion or compromise thereof is very offensive to me.

(Daniels Decl., ex. 4, 2.)

This affidavit is a matter of public record and the specific portions detailed above are undisputed. Therefore, judicial notice is appropriate and does not convert defendants' 12(b)(6) motions into motions for summary judgment. Lee, 250 F.3d at 689-90.

Order - 7

### III. Plaintiffs Fail To State A Claim Under The DPPA

#### A. Plaintiffs Fail To State A Claim Under § 2724(a)

The DPPA regulates the obtainment, use, and disclosure of "personal information" contained in DMV records. Reno v. Condon, 528 U.S. 141, 143 (2000). The DPPA defines "personal information" as "information that identifies an individual, including an individual's . . . name, address (but not the 5-digit zip code), [and] telephone number . . . ." § 2725(3). Section 2724(a) states:

> A person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court.

Section 2721(b) outlines 14 "permissible uses." Section 2721(b)(4) expressly allows the obtainment of personal information "[f]or use in connection with any civil . . . proceeding in any Federal, State, or local court . . . ."

The parties disagree on whether plaintiffs bear the burden of pleading a "purpose not permitted." Defendants argue plaintiffs must plead an impermissible use. Plaintiffs argue that rather than constituting a pleading requirement for a § 2724(a) claim, the permissible uses outlined in § 2721(b) are affirmative defenses. Plaintiffs correctly note that the question is one of first impression in the Ninth Circuit.

////

Order - 8

The only circuit to address the issue, after a thorough statutory analysis of the DPPA, concluded the "permissive uses" outlined in § 2721(b) are not affirmative defenses and thus the plaintiff carries the burden of pleading that the "obtainment, disclosure, or use was not for a purpose enumerated under § 2721(b)." Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King & Stevens, P.A., 525 F.3d 1107, 1112 (11th Cir. 2008). The Eleventh Circuit's reasoning is persuasive.

The Eleventh Circuit noted that "§ 2724(a) plainly does not" cast the § 2721(b) enumerations as exceptions. Id. at 1113. The court noted that had Congress intended to cast the § 2721(b) enumerations as exceptions, Congress would have drafted § 2724(a) to state: "A person who knowingly obtains, discloses, or uses personal information, from a motor vehicle record, shall be liable to the individual to whom the information pertains, except as provided in 18 U.S.C. § 2721(b). Id. at 1112 (emphasis in original)." Instead, § 2724(a) "plainly sets forth three elements giving rise to liability, the third of which is whether the subject act was 'for a purpose not permitted." Id. (quoting § 2724(a)) (emphasis in original).

The court also contrasted § 2721(a), which "plainly sets up the enumerations in § 2721(b) as exceptions," with § 2724(a), which "plainly does not." Id. at 1113. The two prongs of § 2721(a) are drafted similarly and the first states DMV officials shall not

Order - 9

disclose "personal information" "about any individual obtained by the department in connection with a motor vehicle record, <u>except as provided in subsection (b) of this section</u>[.]" Id. (citing § 2721(a)(1)) (emphasis in original). After noting Congress's skill at drafting exceptions, the court presumed Congress intentionally drafted §§ 2721(a) and 2724(a) differently. Id. Thus, the court refused to switch the burden of proving a § 2721(b) enumeration from the plaintiff to the defendant. Id. Relevant to the issue here, the court noted that switching the pleading burden to defendant "would essentially relegate the motion to dismiss stage to something less than a speed bump in § 2724(a) actions." Id. at n.3. Indeed, every § 2724(a) plaintiff alleging a defendant obtained DMV records would survive a Rule 12(b)(6) challenge. Id.

I agree with the Eleventh Circuit's reasoning and conclude that in order to state a claim under § 2724(a), the Foos must allege that defendants: (1) knowingly obtained, disclosed or used personal information; (2) from a motor vehicle record; (3) for a purpose not permitted. See Id. at 1111.

Defendants argue plaintiffs fail to plead defendants obtained the information for a purpose not permitted. Plaintiffs do allege defendants obtained and used "Plaintiffs' personal information for a purpose not permitted under the DPPA . . . ." (Compl., ¶ 27.) At the motion to dismiss stage, however, "formulaic recitation of the

Order - 10

elements of a cause of action will not do." <u>Twonbly</u>, 550 U.S. at 555. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." <u>Iqbal</u>, 129 S.Ct. at 1950. Plaintiffs also allege defendants used the information for "unknown reasons." (Compl., ¶ 25.) Merely pleading an "unknown reason" clearly is not a specific factual allegation allowing the court to reasonably infer defenders here used the information for an impermissible purpose. <u>See</u> <u>Moss v. United States Secret Serv.</u>, 572 F.3d 962, 970 (9th Cir. 2009) (bald allegation, standing alone, is conclusory).

In fact, the only factual allegation in the complaint of an actual impermissible purpose is perhaps the allegation that the:

> "searches, in fact, were not and could not properly be undertaken and information used under this 'permitted use' under the DPPA, since the Plaintiffs had no involvement with or knowledge of dispute [sic] being litigated in the <u>MCI Worldcom v. Goodwin</u> action and were known by the Defendants not to be witnesses in this action, at the time of [the searches]."

(Compl. ¶ 26). Even accepting this allegation as true, plaintiffs fail to raise the claim above a purely speculative level. After putting the well-pleaded facts and judicially noticed facts together, and using common sense, it is clear that defendants ran the searches at issue in preparation for an expected witness in an upcoming trial.

Scott refused to answer background information concerning his residence and employer during his deposition in <u>MCI v. Goodwin</u>.

Order - 11

(Daniel's Decl., ex. 4, 2.) Defendants knew Scott to be a "likely witness" in <u>MCI v. Goodwin</u>. (Compl., ¶ 8.) In November 2007 Scott testified in that trial "on some of the claims, counterclaims and defenses raised in this action." (Compl., ¶ 8.) Richard Foos owned the land, Compl. ¶ 25, Scott resided on, Daniel's Decl., ex. 4, 2. Richard Foos owned the phone number running onto the land. (Compl., ¶ 25.) Richard Foos is Scott's father. (Compl., ¶ 8.)

Additionally, defendants did nothing to alert the Foos of the searches. In fact, plaintiffs only learned of the alleged searches nearly three years after defendants conducted the searches. (Compl., ¶ 29.) Even then, the Foos only learned of the searches through discovery provided to Scott in <u>Scott v. Ward</u>. (Compl., ¶ 28.) I conclude that it is entirely implausible to suggest that a law firm with no connection to the Foos had any purpose for the searches other than to gather information in connection with the pending state court cases involving Scott. The fact that defendants did not reveal the searches to the Foos until nearly three years later, and even then only during contested discovery, further diminishes plaintiffs claim that the searches were not connected to the ongoing state cases.

The fact that the Foos had no knowledge of the events at issue in the state cases and would not be called as witnesses does not alter the undisputed fact that Scott lived at the residence owned by Richard Foos, was "integrally involved" in the

Order - 12

litigation, and refused to answer background questions at his deposition. As stated above, the complaint must allow the court to infer that it is plausible that defendants acted wrongly, not just a mere possibility. Moss, 572 F.3d at 970. Considering the well pleaded factual allegations and Scott's affidavit, it is clear that any alleged searches were made for use in connection with the state court proceedings.

Plaintiffs argue that "there must be 'a reasonable likelihood that the decision maker would find the information useful in the course of the proceeding.'" (Pl.'s Resp., 32, quoting Pichler v. UNITE, 339 F.Supp.2d 665 (E.D. Pa. 2004).) While plaintiffs are correct in their "reasonable likelihood" of use argument, neither cited case remotely resembles the facts present here.

In Cowan v. Ernest Codelia, P.C., 149 F.Supp.2d 67 (S.D.N.Y. 2001), the defendant accessed a database to find the home address of the assistant district attorney who put the defendant through a "vigorous" cross-examination. Cowan, 149 F.Supp.2d at 71-72. The defendant then mailed the attorney an empty letter with a return address but no name. Id. The district court denied defendant's motion for summary judgment because a question of fact existed as to whether the search and subsequent sending of the letter was for use in connection with litigation or rather "to threaten and harass [plaintiff] for personal reasons." Id. at 79. The court noted that "[s]imply because a criminal case was pending, the

Order - 13

private, allegedly vindictive use of the information to threaten opposing counsel would not be a 'use' in connection with a criminal case." Id.

The Foos do not allege that defendants have harassed or threatened plaintiffs with the information. In fact, the Foos state that although the alleged searches occurred in June 2006, "they had no actual knowledge nor any reasonable reason to believe that any searches of any type or nature on them or their private and personal information had ever been sought or obtained by the Defendants at any time [until February 2010]." (Compl., ¶ 29.)

In Pichler, the complaint alleged that a union improperly obtained plaintiffs' personal information by writing down plaintiffs' license plate numbers to identify and subsequently contact plaintiffs "as part of a union organizing effort." Pichler, 339 F.Supp.2d at 666 - 67. The litigation exception did not apply because the complaint did not identify any pending or anticipated proceeding and the court could not determine, without extensive review inappropriate at the motion to dismiss stage, whether the defendants used the plaintiffs' information as part of the "investigation in anticipation of litigation." Id. at 667-68. Unlike Pichler, the complaint here repeatedly refers to litigation in state court involving defendants, Richard Foos's son Scott, and the sister of Scott's ex-wife.

The Foos' complaint fails to state a claim. The pleaded facts and the judicially noticed material clearly establish that defendants obtained the information at issue during their investigation of a witness who refused to answer routine background questions at a deposition. This investigation was clearly "in connection with" MCI v. Goodwin. Because the pleaded allegations reveal the searches undoubtedly fall under the litigation clause of § 2721(b)(4), it is clear that no amendment consistent with the pleaded facts will cure the defect in the complaint. Swartz v. KPMG LLP, 476 F.3d 756, 761 (9th Cir. 2007); Reddy v. Litton Industries, Inc., 912 F.2d 291, 296-97 (9th Cir. 1990). Plaintiffs' § 2724(a) claim is dismissed with prejudice.

### B. Plaintiffs Do Not Bring A Claim Under § 2722

In the complaint, plaintiffs allege the searches were "in violation of the provisions of 18 U.S.C. § 2722(b) . . . ." (Compl., ¶ 26.) Plaintiffs now concede, however, that they bring no claim under § 2722. (Pls.' Mem. In Resp., 28.) (Any DPPA claim "is solely based upon the provisions of Section 2724(a) . . .") Therefore, I deny as moot defendants' motions to dismiss plaintiffs' § 2722 claim.

### IV. The Court Declines to Exercise Supplemental Jurisdiction Over Plaintiffs' State Claim

After dismissing plaintiffs' DPPA claims, I now lack original jurisdiction pursuant to 28 U.S.C. § 1331. Therefore, I may decline to exercise supplemental jurisdiction over the remaining

Order - 15

state claim. 28 U.S.C. § 1367(c). Because it is well before trial and I no longer have original jurisdiction, I decline to exercise supplemental jurisdiction over plaintiffs' state law claim. See Marcus v. AT&T Corp., 138 F.3d 46, 57 (9th Cir. 1998). The state claim is dismissed without prejudice.

## Conclusion

I DENY defendants' motion to dismiss plaintiffs' DPPA claim under Rule 12(b)(1). I DENY as moot defendants' Rule 12(b)(6) motions to dismiss plaintiffs' claim under 18 U.S.C. § 2722. I GRANT defendants' Rule 12(b)(6) motions to dismiss plaintiffs' claim under 18 U.S.C. § 2724(a) and dismiss that claim with prejudice. I decline to exercise supplemental jurisdiction over plaintiffs' Invasion of Privacy claim and dismiss that claim without prejudice.

IT IS SO ORDERED.

DATED this 22 day of September, 2010.

_____
OWEN M. PANNER
U.S. DISTRICT JUDGE

Order - 13